UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHARON STARR, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-cv-0204 |
| | § | |
| OCEANEERING   INTERNATIONAL, | § | |
| INC. ET AL., | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 23). After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Defendants' motion should granted in part and denied in part.

### I.    BACKGROUND

This is an employment discrimination case arising out of Defendant Oceaneering International's ("Oceaneering") alleged demotion and subsequent termination of Plaintiff Sharon Starr ("Starr"), a female former employee. Starr asserts that Oceaneering's adverse employment actions were motivated by her sex and pregnancy, thereby violating Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17, the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654, and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE ANN. §§ 21.001-21.556 (Vernon 2006).

Starr began working for Oceaneering in April 2005 as a temporary Data Entry Clerk. (Defs.' Mot. for Summ. J., Doc. No. 23, ¶ 2.)[1]  She worked under the supervision of Pierce Finlay ("Finlay"), also a named Defendant in this case.  Plaintiff was promoted three times at Oceaneering.  In October 2005, she became a Report Coordinator; in May 2006, she became an Operations Manager Assistant; and in October 2006, she became a Data Processing Manager.  (*Id.* at 2-3.)   As Data Processing Manager, Starr had additional reporting and supervisory responsibilities.  (*Id.* at 3.)   Starr worked in Oceaneering's Inspection Group, and earned an annual salary of $55,000.  (Opp. by Pl. to the Mot. by Defs. for Summ. J., Doc. No. 24, at 1.)

Starr's relationship with Finlay began to deteriorate in early 2007.  Starr asserts that Finlay adopted a "hectoring attitude" towards her and others.  (*Id.*)  He cursed frequently.  (*Id.*)  On one occasion, referring to another female employee, and in front of Starr, Finlay said, "What's that cunt doing in here?"  (Starr Dep., Doc. No. 29, at 43:4-5.)  On another occasion, Finlay sent Starr and other employees an email with sexually explicit paraphernalia and commentary.  Plaintiff testified that she was offended by the email.  (Doc. No. 24, at 2.)

Plaintiff became pregnant in summer 2007.  When she relayed this information to Finlay, he said, "Sucks for you."  (Starr Dep. 53:20-21.)  Later that day, he told Plaintiff, "I guess what I should have said was congratulations."  (*Id.* at 73:16-25.)  On another occasion, he told Starr that she didn't know a damn thing.[2]  (*Id.* at 79:5-20.)

---

[1] This Court must view all evidence in the light most favorable to the non-moving party in a motion for summary judgment.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  The facts of this case appear to be largely undisputed; thus, the Court will pull from both Starr's and Oceaneering's various filings.  Where the parties do disagree, the Court will view the evidence in the light most favorable to Starr.

[2] Oceaneering refers to these instances as irrelevant "isolated, stray remarks," because Starr has not included an environmental harassment claim in her pleadings, nor did she use the remarks to complain of

Plaintiff approached human resources ("HR") several times regarding these problems, but appears to have requested that her conversations remain confidential. (*Id.* at 182:3-12.)  During one particular conversation with HR administrator Julie Hardaway, Hardaway asked Starr whether she wanted to make a formal complaint against Finlay, and stated, "I hope you realize that if you make a complaint you're opening up a big can of worms and other people will be investigated." (*Id.* at 182:10-23.)  Starr responded that she did not "want to cause any problems," but that Hardaway was the HR representative and Starr wanted her to know what was going on in the office. (*Id.* at 182:24-183:2.)  Hardaway told Starr that she needed to go to Finlay's office and tell him that the way he spoke to her was unprofessional and unacceptable in the workplace. (*Id.* at 184:1-5.)  Ultimately, Starr told Hardaway that she did not want to open up a can of worms by opening an investigation of multiple people.  She did not ask Hardaway to speak to Finlay, though she later testified that she would have liked for Hardaway to have said something. (*Id.* at 184:6-19.)

Finlay originally told Starr that he and his superior had arranged for Starr to receive paid maternity leave.  He said that Starr was a dedicated employee.  Finlay told Starr not to fill out any FMLA paperwork, and not to say anything to others in the office, because Oceaneering did not have a policy of offering paid maternity leave to employees. (*Id.* at 58:5-59:25.)

Shortly thereafter, Starr became involved in a dispute with Finlay over whether approval of his daughter's schooling expenses, which were being paid by Oceaneering,

---

discrimination to HR.  The Court understands Starr to be including the remarks outlined above as evidence of deterioration of her relationship with Finlay, coupled with Finlay's attitude towards her when she became pregnant.  Such evidence is probative of sex discrimination, even if Starr has not pled a hostile work environment claim.

had gone through the proper channels. (*Id.* at 60:19-65:5.) After the dispute, Starr noticed a further change in Finlay's attitude. (*Id.* at 65:17-25.) He later called Starr into his office and told her she would not be paid for maternity leave as they had originally discussed. Starr asked Finlay if she now needed to fill out FMLA paperwork, and whether Finlay's superior knew about the change. Finlay answered affirmatively to both questions. (*Id.* at 86:6-15.)

Starr was scheduled to begin FMLA leave on April 14, 2008. (*Id.* at 22-23.) However, a month before her departure date, Starr began suffering from physical conditions relating to stress. From her deposition, Starr appears to allege that the stress was caused entirely by her work environment. (*Id.* at 94:7-95:8, 102:22-25.) Starr's doctor recommended she go on FMLA leave a month early, and faxed the necessary paperwork to Hardaway. (*Id.* at 94:15-18, 95:9-11, 96:10-15.) Starr officially took leave on March 11, 2008. Hardaway provided a FMLA leave statement to Starr, in which she included the earlier departure date; however, Hardaway failed to move up the expected return date. Thus, the FMLA leave statement stated the entire leave period as March 11, 2008-July 8, 2008. This period was roughly seventeen weeks, which is five weeks longer than the leave period mandated by FMLA. Apparently, Oceaneering considered Starr's expected return date to be May 30, 2008, though it failed to communicate that in Starr's leave statement. (Doc. No. 23, ¶ 12.)

On March 10, 2008, just before Starr left for FMLA leave, Starr asked her assistant to complete a task. The assistant did not respond. Starr later received an email from a coworker stating that Finlay had changed things in the office. (Starr Dep. 93:13-94:6.) On April 21, 2008, while Starr was on FMLA leave, she received an email from

4

Finlay.   The email instructed Starr, and other employees that Starr had previously supervised, to report to a new supervisor.   The email stated, in part, "As of today . . . Brent Fraser will be the Immediate Supervisor of the following employees: Lisa Finlay, Mia Goodwin, Julie Rowe-Garcia, Amanda Orrick, Sharon Starr, Nandita Goswami." (Doc. No. 23, Ex. S.)   Thus, Fraser was to absorb Starr's supervisory responsibilities. (Doc. No. 23, ¶ 26.)

Prior to May 30, 2008, the date Oceaneering expected Starr to return to work, Hardaway contacted Starr to inquire as to whether Starr would return to work after the expiration of her FMLA leave on May 30.   (Doc. No. 23, Ex. R, ¶ 3.)   Starr informed Hardaway that she had not been released by her doctor and could not return on May 30.

Starr returned to work on June 11, 2008.   In the early morning, Finlay called Starr into his office.   He told her that her position as Data Processing Manager had been eliminated due to cost savings initiatives.   (Starr Dep. 106:15-18, 131:25-132:3.) Defendants claim that there were no positions at Oceaneering that Starr was qualified for that paid the same salary she received before going on FMLA leave.   (Doc. No. 23, Ex. N., ¶ 5.)   Oceaneering offered Starr a position as a Senior Data Processor at a salary of around $18 per hour.   (Doc. No. 23, ¶ 15.)   Starr did not accept the position, at least partly because of the substantial reduction in pay.   (Starr Dep. 164:7-22.)

Due to stress caused by her work situation, Starr went on unpaid leave starting around June 19, 2008.   (*Id.* at 117:22-118:13; Doc. No. 23, Ex. V.)   She remained on a personal leave of absence until December 22, 2008, when she was terminated.   (Doc. No. 23, Ex. W.)

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented.  *See* FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party.  *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).  This Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Id.*  The Court may not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  "The court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  *Id.* at 151.  Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(e)(1); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'" (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))).

III.     **TITLE VII**

A.  **Starr's Discrimination Claim**

Starr asserts that Oceaneering violated Title VII by discriminating against her on the basis of her sex and pregnancy.  Starr alleges: "Defendant Oceaneering demoted and then discharged Plaintiff; and, in so doing, Oceaneering was motivated, at least in part, by Plaintiff's sex and by Plaintiff's pregnancy."  (Doc. No. 18, ¶ 18.)  The Court considers Starr's Title VII and TCHRA state claims under the same analysis.  The purpose of TCHRA is to execute the policies of Title VII.  *Bugos v. Ricoh Corp.*, 2008 WL 3876548, at *3 (5th Cir. Aug. 21, 2008) (citations omitted).  "Therefore, analogous federal cases and statutes guide the interpretation of this Texas law," including the *McDonnell Douglas* framework discussed below.  *Id.*  Starr's federal and state claims will be considered together.

Title VII prohibits an employer from failing to hire, refusing to hire, discharging any individual, or "otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  As amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), "Title VII defines the term 'because of sex' as including, but not limited to, 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'"  *Laxton v. Gap Inc.*, 333 F.3d 572, 577 (5th Cir. 2003) (quoting 42 U.S.C. § 2000e(k)).  The second clause of the PDA "further provides that 'women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so

affected but similar in their ability or inability to work.'"   *Id.* (quoting 42 U.S.C. § 2000e(k)).   Congress intended for the PDA to provide relief for working women and to end discrimination against pregnant workers.   *Id.* at 578 (citing *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 285 (1987)).

Starr's sex and pregnancy discrimination claims are analyzed under the same rubric as other Title VII discrimination claims.   Where there is no direct evidence of discrimination, the plaintiff may build a case with circumstantial evidence.   *Id.* at 578. Where a plaintiff offers circumstantial evidence of discrimination, courts analyze the case under the *McDonnell Douglas* framework.   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   Under *McDonnell Douglas*, the plaintiff "must first create a presumption of discrimination by making out a prima facie case of discrimination." *Laxton*, 333 F.3d at 578 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)).   A prima facie case consists of proof showing each of four elements: (1) the plaintiff is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, that others similarly situated were more favorably treated.[3]   *Nasti v. CIBA Specialty Chem. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (quoting *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).   If the plaintiff succeeds in establishing a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action.

---

[3] Disparate treatment is "deliberate discrimination in the terms or conditions of employment."   *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000).

*Nasti*, 492 F.3d at 593. "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). Once the employer comes forward with a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff, who has the "ultimate burden of proving that the employer's preferred reason is not true but instead is a pretext" for discrimination. *Id.* Plaintiff may establish pretext directly, by showing that a discriminatory reason motivated the employer, or indirectly, by showing that the employer's reasons for the adverse employment action are not believable. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Oceaneering urges the Court to grant summary judgment on Starr's Title VII discrimination claim, arguing that she is unable to establish a prima facie case of discrimination based on sex or pregnancy. Oceaneering does not dispute that Starr can establish the first three prongs of her prima facie case. Oceaneering instead focuses on the fourth element, arguing that Starr cannot show that she was replaced by someone outside of her class following her demotion. Oceaneering maintains that the summary judgment record conclusively shows that no one replaced Starr because her position was eliminated, and thus no replacement was chosen. In support of this argument, Oceaneering offers deposition testimony from Hardaway, Finlay, and Fraser, who all state that Plaintiff's position was eliminated and no replacement was hired, and 2006-2008 department organizational charts, which purport to show that the Data Processing Manager position that Starr previously held was eliminated.

Starr argues first that the *McDonnell Douglas* prima facie elements need not be rigidly construed or applied in all cases.  She argues, in the alternative, that she has met the fourth prong of her prima facie case.

The Court need not decide whether this case calls for a variation of the normal *McDonnell Douglas* elements.[4]  Starr has established a standard prima facie case of discrimination by offering evidence that she was replaced either by Brent Fraser, a male, or by a combination of Brent Fraser and other non-pregnant employees. Indeed, Oceaneering admits that Starr's "supervisory responsibilities were absorbed by the Operations Manager, Mr. Brent Fraser." (Doc. No. 23, ¶ 26.)

Oceaneering's argument that Starr cannot establish the fourth element because it did not seek to replace her specific position is unavailing.  Oceaneering misstates the case law to this Court.  Claiming to cite to Fifth Circuit precedent on this issue, Oceaneering offers a quote indicating that, where part of a Title VII plaintiff's duties were absorbed by another employee, the plaintiff had failed to prove that she was replaced by someone outside of the protected class.  The quote offered by Oceaneering, however, comes not from a Fifth Circuit case, but from a Louisiana district court that was later affirmed by the Fifth Circuit.  In affirming, the Fifth Circuit passed entirely on the question of whether absorption of duties could satisfy the fourth element of *McDonnell Douglas*.

---

[4] The Court observes that Starr is correct in maintaining that the standard prima facie case is not required in every case.  The controlling law in this circuit explicitly recognizes that the "focus of the [discrimination] inquiry may not be obscured by the blindered recitation of litany.  The aim of the [*McDonnell Douglas*] test, and particularly of the fourth element, is to identify 'actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act.'"  *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 86 (5th Cir. 1982) (citing *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978). If a plaintiff fails to establish a prima facie case, "the district court must examine all the evidence that has been adduced for other indicia of . . . discrimination relating to [the adverse employment action] and determine whether it is more likely than not that the employer's actions were based on illegal discriminatory criteria."  *Jatoi v. Hurst-Euless-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987) (citing *Byrd*, 687 F.2d at 86).  As stated above, the Court need not pursue this inquiry, because Starr has established a prima facie case.

Instead, the Court assumed that the plaintiff had established a prima facie case and went on to decide the case on other grounds. *Williams v. Sterling Healthcare Servs., Inc.*, 193 Fed.Appx. 328, 330-31 (5th Cir. 2006).

Contrary to Oceaneering's position, the law in this circuit plainly states that reassignment of responsibilities after a plaintiff's position is eliminated can constitute replacement for purposes of establishing a prima facie case. *See McLaughlin v. W&T Offshore, Inc.*, 78 F. App'x 334, 338 (5th Cir. 2003) ("[A]lthough [plaintiff] was not replaced by a single person, her duties were delegated to two employees who were not pregnant. [Plaintiff] established a prima facie case of pregnancy discrimination."); *Lapierre v. Benson Nissan, Inc.*, 86 F.3d 444, 449 (5th Cir. 1996) ("When [plaintiff's] position of Service Manager was eliminated, [his] responsibilities as second-in-command were assumed by the Quality Control Shop Foreman, . . . a white male. Therefore, for purposes of summary judgment, [plaintiff] has established a prima facie case.") By Defendant's own admission, Fraser assumed Starr's managerial responsibilities. Whether Fraser alone replaced Starr, or those responsibilities were split between more than one non-pregnant employee, the Court finds that Starr has met the fourth element of her prima facie case.[5]

Because Starr has established a prima facie case of retaliation, the burden now shifts to Oceaneering to articulate a legitimate, non-discriminatory reason for Starr's demotion. Oceaneering maintains that Starr was demoted because her Data Processing

---

[5] Where the employer does not replace a Title VII plaintiff, the fourth element instead generally requires the plaintiff "to show that others who are not in the protected class remain in similar positions." *Vasquez v. El Paso Cmty. Coll. Dist.*, 177 F. App'x 422, 424 (5th Cir. 2006) (citing *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999)). Here, because there is evidence that Fraser assumed Starr's responsibilities, and both parties use the traditional prima facie case, the Court does not vary the fourth prong. Under the reformulation, however, Starr still successfully establishes a prima facie case. She shows that, with the exception of male employee Radhakrishnan Balan Nair, whose situation is discussed below, she was the only employee whose position was eliminated.

Manager Position was eliminated in order to reduce overhead costs within her department.  In support of its claim, Oceaneering offers deposition testimony from several employees, and points to admissions in Starr's own deposition that her position was eliminated.  (Doc. No. 23, ¶ 27.)

Although Starr does acknowledge that her position was eliminated, she asserts that Oceaneering's reason for eliminating her position is pretextual.  First, she points to inconsistent statements made by Oceaneering management regarding Starr's demotion.  For example, although the department organizational charts purport to show that the department was restructured and Starr's position, in addition to the position of male employee Radhakrishnan Balan Nair, was eliminated, Finlay flatly denies in his deposition testimony that the Inspection Group underwent a reorganization.  (*See* Doc. No. 23, ¶ 27; Finlay Dep. 29:24-30:6.)  Hardaway, by contrast, states that the entire department underwent a reorganization.  (Hardaway Dep. 26:7-18.)

Second, although Oceaneering maintains that it eliminated Nair's position as well, Nair's own deposition testimony shows that he approached the company about transferring to a better position.  Nair felt that his then-current position in the Inspection Group did not have opportunities for growth.  He sent out resumes to several managers at Oceaneering.  He transferred from his position in the Inspection Group after he interviewed for and received a position as a business analyst in the IT Department.  (Nair Dep. 10:17-11:21.)  Thus, Starr asserts that Nair's position was not eliminated as a cost-cutting measure, as Oceaneering argues.

Third, Starr argues that while Finlay asserted in testimony that he tried to "cut costs all the time," he was unable to name any specific cost-cutting measures he had

undertaken, and acknowledged that he had not eliminated any positions in 2009.  (Finlay Dep. 43:23-44:12.)   When asked about cost-cutting during the time of Starr's demotion, Finlay gave just Nair's elimination and streamlining in the purchase of office supplies as examples of cost-cutting.  (Finlay Dep. 31:10-32:25.)

The Court agrees that Plaintiff has shown "'some evidence . . . that [would] permit[] a jury to believe'" that Oceaneering's articulated reason for demoting Starr is pretext.  *Raborn v. Inpatient Mgmt. Partners Inc.*, 2009 WL 3428208 (5th Cir. 2009) (quoting *Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998)).   Starr has raised a genuine issue of fact as to whether Oceaneering's articulated reason is worthy of credence.   While the record does indicate that Starr's position was eliminated, Oceaneering's contradictory evidence regarding its cost-cutting measures, in addition to Starr's position being the single position eliminated, creates a material issue of disputed fact as to whether Oceaneering's articulated reason is false.  *See Blow v. City of Antonio*, 236 F.3d 293, 298 (5th Cir. 2001).   Although Oceaneering argues that the inconsistent deposition testimony is more semantic than substantive, the Court considers Starr's evidence to be probative of the question of whether Oceaneering's cost-cutting reason is pretextual.  *See Prejean v. Radiology Associates of Southwest Louisiana Inc.*, 342 F. App'x 946, 950 (5th Cir. 2009).   Considering all the facts and drawing all inferences in Starr's favor, one is "simply not required to believe" Oceaneering's proffered reason for Starr's demotion.  *Blow*, 236 F.3d at 297.

The Supreme Court held in *Reeves v. Sanderson Plumbing Products, Inc.*, that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of act to conclude that the employer

unlawfully discriminated."  530 U.S. 133, 148 (2000).  The Court concludes that Starr has established a prima facie case and submitted sufficient evidence to show that Oceaneering did not demote Starr pursuant to its cost-cutting measures.  Oceaneering's motion for summary judgment is denied on Starr's Title VII discrimination claim.

## B.  Starr's Retaliation Claim

Starr also asserts that Oceaneering impermissibly retaliated against Starr by discharging her after she filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC").   In order to establish a prima facie case of retaliation, Starr must establish that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (citations omitted).  If Starr makes this showing, the burden shifts to Oceaneering to articulate legitimate, nondiscriminatory reasons for discharging Starr.  If Oceaneering can articulate such reasons, the burden shifts back to Starr, who must show that Oceaneering's proffered reasons are pretextual.  *Harris v. Miss. Transp. Comm'n*, 329 F. App'x 550, 556 (5th Cir. 2009).

Oceaneering argues that Plaintiff never filed an EEOC charge relating to the termination, and has therefore failed to exhaust her administrative remedies on this claim before bringing suit.  The Court need not decide this issue.  Assuming arguendo that Starr has exhausted her administrative remedies and made out a prima facie case of retaliation, summary judgment on this claim is still appropriate because Starr provides no evidence that Oceaneering's legitimate, nondiscriminatory reason is pretext.  Oceaneering asserts

that it discharged Starr in December 2008 pursuant to its neutral leave of absence policy, which expressly stipulates that "employees be removed from the payroll if they have not actively worked for six months, unless special circumstances apply." (Doc. No. 23, Ex. X.)  Starr wholly fails to address this argument on the merits.  Starr asserts that her termination form is inadmissible hearsay, but the Court does not rely on Plaintiff's termination form in coming to its conclusion.  Instead, the Court looks to Oceaneering's leave of absence policy, which states unequivocally that employees may be terminated if they have not worked for six consecutive months.  Starr does not offer any evidence that she was not terminated in accordance with this policy, or that Oceaneering's proffered reason is unworthy of credence.  The Court grants summary judgment to Oceaneering on Starr's retaliation claim.

### IV.    FMLA

The FMLA allows eligible employees working for covered employers to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition.  *Hunt v. Rapides Healthcare Sys.*, 277 F.3d 757, 762-63 (5th Cir. 2001) (citing 29 U.S.C. § 2601(b)(1)-(2)).  The FMLA seeks to "meet the needs of families and employees and to accommodate the legitimate interests of employers."  *Id.* (citations omitted).  It does so with two distinct sets of provisions.  The first set of provisions is prescriptive.  Those provisions "create a series of substantive rights, namely, the right to take up to twelve weeks of unpaid leave under certain circumstances,"  *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (citations omitted), including "the birth of a son or daughter of the employee and in order to care for such son or daughter."

29 U.S.C. § 2612(a)(1)(A).  When an employee returns from FMLA leave, her employer

has a duty to reinstate the employee to the same position she held before taking leave, or

"'an equivalent position with equivalent employment benefits, pay, and other terms and

conditions of employment.'"  *Hunt*, 277 F.3d at 763 (quoting 29 U.S.C. § 2614(a)(1)).

An employer's failure to do so "gives rise to an entitlement claim under 29 U.S.C.

§ 2615(a)(1)."  *McArdle v. Dell Prods., L.P.*, 293 F. App'x 331, 334 (5th Cir. 2008)

(citing *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004)).  The

second set of provisions is proscriptive.  Those provisions prohibit an employer from

discriminating or retaliating against an employee for exercising her FMLA rights.  *Hunt*,

277 F.3d at 763 (citations omitted).  If an employer engages in prohibited discrimination

or retaliation, the employee has a claim under 29 U.S.C. § 2615(a)(2). *McArdle*, 293 F.

App'x at 334 (citing *Haley*, 391 F.3d at 649).

Starr maintains that Oceaneering committed violations of both the prescriptive

and proscriptive provisions of FMLA.

### A.  Starr's Entitlement Claim

Starr asserts that Oceaneering violated her prescriptive rights under the FMLA by

demoting her during the period of her FMLA leave and not reinstating her to her previous

position, or an equivalent one, upon her return.  Defendants argue that Starr was not

entitled to reinstatement because, among other reasons, she failed to return to work after

the conclusion of her twelve-week FMLA leave. As stated *supra* Part I, Starr was set to

return from FMLA leave on May 30, 1998, but instead returned on June 11, 1998.

 "If an employee fails to return to work on or before the date that FMLA leave

expires, the right to reinstatement also expires."  *Hunt*, 277 F.3d at 763.  Starr does not

dispute that Oceaneering calculated her time properly.  Neither does she claim that she misunderstood when her leave ended because of Hardaway's miscalculation on the leave form, which listed her return date in July.  It is clear that Starr understood that Oceaneering expected her to return on May 30, 2008.  (Starr Dep. 97:9.)  Starr returned eight work days later, on June 11, 2008.  She offers no evidence that this eight-day period was approved through an alternative Oceaneering leave policy, such as disability or vacation time, or even that she attempted to obtain such approval.  As far as the Court understands the record, Starr's eight workday absences following the expiration of her FMLA leave were unexcused by Oceaneering.

On the issue of her extra leave, Starr argues that she did not forfeit her right to reinstatement by failing to return to work on time.  Starr maintains that there is a fact question as to whether she was demoted in April, when Finlay sent out the email reassigning job responsibilities.  *See supra* Part I.  Starr urges that, assuming she was demoted in April, Oceaneering's violation in demoting her must be understood as discharging her obligation to return timely from leave.  Starr admits there is little case law addressing the question.  She interprets the Fifth Circuit's decision in *Hunt v. Rapides Healthcare System*, 277 F.3d 757 (5th Cir. 2001), as supporting the proposition that for FMLA reinstatement claims, an employee who learns—prior to the expiration of her FMLA leave—that her position has been eliminated, bears no duty to return to work upon the expiration of her leave.  Starr urges the Court to extend this proposition to embrace constructive knowledge of a demotion or termination where, as here, the employee's lack of actual knowledge may be the intentional fault of the employer.[6]

---

[6] Plaintiff alleges that her uncertainty about her job, caused by the April 21 email, is attributable to the Defendants, who provided her with selective information about her reassignment.

In *Hunt*, the plaintiff worked as a registered nurse at the defendant medical center's critical care unit.  She went on FMLA leave after suffering serious injuries from a car accident.  During her leave, the defendant assigned her full-time day shift position to another nurse.  When the plaintiff inquired about returning to work, no full-time day shift position was open.  The defendant offered the plaintiff a full-time night position, which she declined.  She returned to work more than one month after her FMLA leave ended. 277 F.3d at 761.

The parties in *Hunt* vigorously disputed whether the plaintiff attempted to return to work promptly upon expiration of her FMLA leave.  The plaintiff testified that she called her superior prior to the expiration of her leave in order to be placed on the work schedule.  The defendant testified that she didn't make that call until after her leave expired.  The Fifth Circuit stated, "If [the plaintiff] did not attempt to return to work on or before her FMLA leave expired . . . the [defendant] was no longer under an express statutory duty to reinstate her to her former position or an equivalent position."  277 F.3d at 764.  Starr is incorrect in asserting that *Hunt* supports the proposition that an employee does not have a duty to return to work promptly where she learns, prior to the expiration of her leave, that she has been demoted or terminated.  As the above quote shows, the Fifth Circuit considered the question of whether the plaintiff attempted to return promptly to work to be dispositive on the question of the defendant's FMLA liability.  Indeed, the Fifth Circuit stated plainly that if, as the plaintiff argued, she attempted to return to work on time, the defendant was required to return her to her previous position or an equivalent position.  If, on the other hand, she had not attempted to return to work upon the

expiration of her leave, "the applicable case law" led to the conclusion that the defendant had not violated Plaintiff's FMLA rights.

A review of other case law regarding FMLA leave and an employee's duty to return to work supports this conclusion. *See, e.g.*, *Hart v. Comcast of Houston, LLC*, 2009 WL 3334602, at *2 (5th Cir. Oct. 15, 2009); *Harrelson v. Lucent Techs. Inc.*, 211 F.3d 125, 125 (5th Cir. Mar. 6, 2000).

The Court acknowledges Starr's argument that a rule that discharges a plaintiff's duty to return to work where she learns she has been demoted appears fair. Under further scrutiny, however, adopting such a strict rule would create inequities for employers. For example, employers often have to reshuffle and reassign active duty employees to cover the work of the employee on leave. Under Starr's urged rule, an employee on leave who learns that her responsibilities have been given to one or more active duty employees could fail to return to work and argue that she has been demoted or discharged under the FMLA, without giving the employer the chance to reinstate her upon her return. This Court believes that employers ought to be given the flexibility to restructure positions and responsibilities of employees on leave in order to meet its operations demands, without the fear of FMLA liability attaching before the plaintiff has even returned from leave. The employer's duty to reinstate is triggered upon the employee's return from leave, not during her leave.

Furthermore, were the Court to adopt such a rule, it would hinge on the plaintiff having actual knowledge that she has been demoted or terminated, as opposed to constructive knowledge. This would eliminate any possible miscommunications between employer and employee that could result in FMLA lawsuits. Even under an actual

knowledge rule, Starr would not prevail.  Although she received an email during leave that appeared to reassign supervisory positions, her actions show that she did not believe that her position had been taken away from her—or at the very least, that she was not certain that she had been demoted.  She returned to work on June 11, 2008, and believed she was "going back in as a supervisor."  (Starr Dep. 105:24-25.)  When she arrived at the office, she resumed her duties just as she would have in her old position.  (*Id.* at 106:8-14.)  Thus, Starr's own testimony makes clear that she did not have actual knowledge that she had been demoted.

Of course, the consideration of an employee's duty to return to work may be different where an employer communicates unequivocally that a plaintiff has been demoted or terminated and will not be reinstated to an equivalent position upon the expiration of her leave.  That scenario is not presented to the Court here, and is best left for consideration in a case that presents such facts.

### B.  Starr's Retaliation Claims

Starr's FMLA retaliation claim is twofold.  First, Starr alleges that Oceaneering retaliated against her decision to take leave by demoting her.[7]  Second, Starr alleges that Oceaneering retaliated against her when she protested their acts surrounding her FMLA leave, and subsequently filed a charge of discrimination with the EEOC.

This court applies the *McDonnell Douglas* framework, discussed above, to analyze retaliation claims under the FMLA, as "'there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.'"  *Hunt*, 277 F.3d at 768 (quoting *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319

---

[7] Plaintiff alleges: "Defendants demoted Plaintiff at least in substantial part because of her decision to take FMLA leave; and Plaintiff's demotion was not a part of a bona fide reorganization or restructuring by Oceaneering."  (First Am. Compl., Doc. No. 18, ¶ 13.)

(5th Cir. 1999)).   "Nothing in the FMLA landscape suggests that the teachings of *McDonnell Douglas* would be less useful in ferreting out illicit motivations in that setting." *Id.* (quoting *Chaffin*, 179 F.3d at 319).

A plaintiff establishes a prima facie case of retaliation under the FMLA by showing that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) she was treated less favorably than an employee who did not request FMLA leave, or (3b) the adverse decision was made because she took FMLA leave.  *Id.*  If Starr makes this prima facie showing, the burden then shifts to Oceaneering to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action.  If Oceaneering makes this showing, the burden shifts back to Starr.  She must show by a preponderance of the evidence that Oceaneering's proffered reason is pretext for retaliation.  *Id.* (citations omitted).

As noted in Part IV.A, Starr's entitlement claims, wherein she argues that Oceaneering violated its duty to reinstate her to her former position, fail as a matter of law because she failed to return to work on time.  Starr's retaliation claims, however, do not suffer the same fate.  "[A] plaintiff need not establish a violation of the substantive, prescriptive provisions of the FMLA to allege a violation of the proscriptive provisions.  The FMLA's protection against retaliation is not limited to periods in which an employee is on FMLA leave, but encompasses the employer's conduct both during and after the employee's FMLA leave." *Hunt*, 277 F.3d at 768-69.  Oceaneering's alleged retaliatory acts occurred, at least in part, after Starr returned from FMLA leave.  She was still employed by the company.  Therefore, her retaliation claims may go forward.

### 1.  Starr's Demotion-as-Retaliation Claim

As noted above, Starr alleges that by demoting her from Data Processing Manager to Senior Data Processor, Oceaneering retaliated against her for taking FMLA leave.  She alleges a violation of the anti-retaliation provisions of the FMLA.

Oceaneering has not moved for summary judgment on Starr's retaliation-as-demotion claim.  Whether inadvertently or purposefully, Oceaneering's FMLA summary judgment arguments focus solely on Starr's interference claim and termination-as-retaliation claim.  Therefore, the Court will not grant summary judgment on this claim.

### 2.  Starr's Termination-as-Retaliation Claim

Starr also claims that Oceaneering terminated her both for protesting "Defendants' acts and practices," which the Court understands as her complaints to Hardaway about Finlay's treatment of her, and filing a charge of discrimination with the EEOC.  (Doc. No. 18, ¶ 13.)  Starr asserts that both of these activities are protected under Title VII.

"An employee has engaged in protected activity when he or she has (1) 'opposed any practice made an unlawful employment practice by this subchapter,' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 n.8 (5th Cir. 2008) (quoting 42 U.S.C. § 2000e-3(a)).  Terminating an employee because she has engaged in protected activity is impermissible retaliation.

Filing a charge of discrimination with the EEOC constitutes protected activity under Title VII.  *See Miller v. Potter*, 2010 WL 45865, at *1 (5th Cir. Jan. 7, 2010) ("Title VII . . . prohibits retaliation by an employer against an employee who has filed a charge of discrimination.").  Similarly, an "employee's complaint to the head of

personnel" is a protected activity. *Aryain*, 534 F.3d at 484 n.8 (citing *See Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

This Court need not consider whether Starr's complaints to Hardaway, in which Starr does not appear to have articulated her belief that Finlay's actions were discriminatory, constituted protected activity.  Assuming she engaged in protected activity both by complaining to Hardaway and filing a charge of discrimination with the EEOC, and that she has established a prima facie case of retaliation, she fails to rebut Oceaneering's articulated legitimate, nondiscriminatory reason.  Oceaneering asserts that it terminated Starr pursuant to its neutral leave of absence policy.  (*See* Part III.B.)  Starr fails to address this argument.  Thus, Oceaneering's preferred reason stands, and Starr's termination-as-retaliation is dismissed.

## V.    FAILURE TO MITIGATE

Plaintiff seeks to recover damages for her alleged injuries, including "an award of back pay and/or front pay (in lieu of reinstatement) for the period running from about April 2008 until the date that Plaintiff obtains comparable new employment, minus such offsets to which Oceaneering is entitled."  (Doc. No. 18, ¶ 18.)  Oceaneering argues that Starr's claim for back pay and front pay damages should be precluded as a matter of law because Starr failed to satisfy her statutory duty to make reasonable efforts to mitigate these damages.

A plaintiff suing for back pay and front pay has a duty to mitigate her damages. *See Tratee v. BP Pipelines (N. Am.) Inc.*, 2009 WL 1457160, at *5 (S.D. Tex. May 22, 2009) (back pay); *Persons v. Jack in the Box, Inc.*, 2006 WL 846356, at *3 (S.D. Tex. Mar. 31, 2006) (front pay).  The plaintiff is required to use "'reasonable diligence to

obtain substantially equivalent employment.'" *Tratee*, 2009 WL 1457160, at *5 (quoting

*West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003)).   A Title VII

plaintiff's obligation to mitigate damages does not require her to accept a noncomparable

or inferior position subsequent to her demotion or termination.   Substantially equivalent

employment is employment that provides "virtually identical promotional opportunities,

compensation, job responsibilities, working conditions, and status."  *Id.* (citing *Sellers v.*

*Delgado Cmty. Coll.*, 839 F.2d 1132, 1138 (5th Cir. 1988)).   The employer has the

burden of proving failure to mitigate.   In order to meet this burden, the employer "must

show not only that the plaintiff failed to exercise reasonable diligence, but that there were

jobs available which plaintiff could have discovered and for which she was qualified."

*Huffman v. City of Conroe*, 2009 WL 361413, at *13 (S.D. Tex. Feb. 11, 2009) (citing

*Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972)).[8]

Oceaneering has not presented any evidence that raises a genuine issue of material

fact as to whether jobs were available that Starr could have discovered, and for which she

was qualified.   Oceaneering makes much of the fact that Starr has not sought employment

subsequent to her termination, but has not presented any evidence that substantially

equivalent employment positions were available for which Starr did not apply.  *See id.*

Because Oceaneering has not created a genuine issue of fact on this element of its

---

[8] This Court's opinion in *Huffman* acknowledges that *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132 (5th Cir. 1998), appears to conflict with *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972) in terms of the elements that must be shown to establish a failure to mitigate damages.  *Sellers*, the more recent decision, appears to state that if an employer proves that an employee has not made reasonable efforts to seek out employment, it need not show the availability of substantially equivalent employment.  839 F.2d at 1139. *Sparks*, by contrast, states that the employer must show not only that the plaintiff failed to use reasonable diligence in seeking employment, but also that there were jobs available which she could have discovered and for which she was qualified.  460 F.2d at 443.  This Court resolved that difference in *Huffman* by noting that one appellate panel may not overrule a decision of a prior panel absent en banc reconsideration or a superseding decision by the Supreme Court.  Where two panel opinions conflict, the earlier opinion controls.  *Huffman*, 2009 WL 361413, at *13 (citing *United States v. Dial*, 542 F.3d 1059, 1060 (5th Cir. 2008)).  Because *Sparks* preceded *Sellers*, we apply that rule here.

affirmative defense, the Court will not grant summary judgment on its failure to mitigate claims.

**CONCLUSION**

Oceaneering's Motion for Summary Judgment (Doc. No. 23) is **GRANTED** in part and **DENIED** in part.  The Court grants summary judgment in favor of Oceaneering on Starr's FMLA interference claims and termination-as-retaliation claims.  The Court also grants summary judgment in favor of Oceaneering on Starr's Title VII retaliation claims.

The Court declines to grant summary judgment on Starr's FMLA demotion-as-retaliation claim, Title VII discrimination claim, and Oceaneering's failure to mitigate claim.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 18th day of February, 2010.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**